UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Arcangelo Capozzolo, et al.
                     Plaintiffs,

                                          **Hon. Hugh B. Scott**

                                          04CV115A

                v.                        **Report**
                                            **&**
                                          **Recommendation**


Philip A. Krim d/b/a K.S. Enterprises,
Multistrength,
                     Defendants.
_____

      Pending before the Court is the defendant's motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue (Docket No. 8).

**Background**

      Plaintiffs, Arcangelo Capozzolo and Market Traders LLC (referred to collectively as "Capozzolo"), commenced this action in New York State Supreme Court alleging that Philip A. Krim, doing business as K. S. Enterprises Multistrength (referred to collectively as "Krim") breached an purported non-competition agreement and misappropriated proprietary information. Capozzolo is a New York resident. Krim resides in Texas. The action was removed to this Court (Docket No. 1) based upon diversity jurisdiction.

      The record reflects that the relationship between the parties originated on October 22,

1

2003, when Krim inquired about buying a web site offered for sale by Capozzolo. The web site was a marketing device for the sale of a product named FreeDerm, an eczema cream. Capozzolo and Krim communicated almost exclusively though e-mails. (see Docket No. 9, Exhibits F-I). Although the principals may have spoken by telephone on at least one occasion, it appears that all negotiations took place by e-mail. It does not appear that any agreement was reduced to a formal written contract. After it was determined that Krim could not purchase the web site, it was determined that Krim would purchase jars of FreeDerm from Capozzolo and sell them on his own web sites. In this regard, Krim purchased 100 jars of FreeDerm from Capozzoo for $15.00 per jar or $1500.00 . (Docket No. 9, Exhibit F).

One issue discussed by the principals was Capozzolo's concern that he and Krim would be advertising FreeDerm for sale on the same Internet search engines. (Docket No. 9, Exhibit G, November 16, 2003 e-mail from Capozzolo to Krim). Krim responded that he would "not go after the number one position" on a particular search engine if Capozzolo was advertising on that search engine. (Docket No. 9, Exhibit G, November 17, 2003 e-mail from Krim to Capozzolo). Capozzolo was apparently satisfied with this response and stated that "the marketing question has been answered ... Just make sure you are below me on all your bids."[1] (Docket No. 9, Exhibit G, November 17, 2003 e-mail from Capozzolo to Krim). Capozzolo then identified the search engines he used to advertise FreeDerm. Capozzolo also asked to see the "exact wording"

---

[1] Generally speaking, search engines "auction" off placement on their web sites. Advertisers "bid" what they would pay (often "per click") to the search engine. Bids are accessible so that competitors can attempt to out-bid each other for better placement. Typically, the higher the bid, the higher an advertiser will appear on the search results page after a prospective consumer performs a search. In some instances, it appears that placement will be influenced by factors in addition to bid price.

Krim intended to use for his "search engine listings" and advised Krim that he needed to add a disclaimer that FreeDerm had not been evaluated by the U.S. Food and Drug Administration ("FDA").  Indeed, Capozzolo provided Krim the exact language to be used in this regard.  (Docket No. 9, Exhibit G, November 25, 2003 e-mail from Capozzolo to Krim).

On December 5, 2003, Capozzolo e-mailed Krim stating that he noticed that Krim's "google" was "exactly above me on all key words" and instructed Krim to "change [his] max bid to .30 cents per click."  (Docket No. 9, Exhibit G, December 5, 2003 e-mail from Capozzolo to Krim).  Krim responded that "Google does not rank simply on max bid, they rank based on click through and that means that our description was getting a high[er] click through percent than yours."  (Docket No. 9, Exhibit G, December 5, 2003 e-mail from Krim to Capozzolo).  Capozzolo responded by saying that "whatever it is, ... I am losing buyers from it and you are taking them."  He then asked Krim what was the max bid he set for Google.  (Docket No. 9, Exhibit G, December 5, 2003 e-mail from Capozzolo to Krim).

Thereafter, the principals could not agree as to how to carry-on.  Capozzolo was unhappy that Krim's listing was appearing above his on Google.  Krim asserted that this was because his descriptions were written better and he was realizing a much higher "click through" rate than Capozzolo.  Krim suggested that he could market FreeDerm better than Capozzolo.  (Docket No. 9, Exhibit G, December 8, 2003 e-mail from Krim to Capozzolo).  Krim expressed a willingness to purchase 1000 bottles at $10 per bottle, but wanted a long-term commitment from Capozzolo to supply Krim with the product.  (Docket No. 9, Exhibit G, December 8, 2003 e-mail from Krim to Capozzolo).  Capozzolo questioned whether the FDA would object to some of the wording used by Krim (Docket No. 9, Exhibit G, December 8, 2003 e-mail form Capozzolo to Krim) and

then suggested that Krim focus on the Google market and Capozzolo would focus on advertising on Overture and FindWhat (other search engines).  (Docket No. 9, Exhibit G, December 8, 2003 e-mail from Capozzolo to Krim).   Krim did not agree to the division of the search engines and reiterated his need for a firm commitment of supply. (Docket No. 9, December 8, 2003 e-mail from Krim to Capozzolo).

It appears that the relationship between Krim and Capozzolo broke down at this point.  Krim now markets a competing eczema cream on his web site.   Capozzolo asserts that a contractual relationship which included a non-compete provision can be culled from this series of e-mails and that Krim breached this agreement, misappropriated proprietary information, and uses false testimonials which damage the plaintiff.

**Motion to Dismiss**

Krim brings the instant motion asserting that the Court lacks personal jurisdiction over him.  Krim asserts that he has no contacts with the state of New York.  It is undisputed that Krim operates various corporations located in Texas; that Krim does not maintain any proprietary locations in New York; that Krim does not own or rent property in New York; that Krim does not maintain any offices in New York; that Krim does not have employees that operate in New York; and that Krim does not maintain any bank accounts in New York.

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir.1999).  Where, as here, a court relies on pleadings and affidavits, rather than conducting a "full-blown

4

evidentiary hearing," the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant. Id. (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir.1981)). The Court must construe the pleadings and affidavits in the light most favorable to the plaintiff, resolving all doubts in the plaintiff's favor. CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986); Distefano v. Carozzi North America, Inc., 286 F.3d 81 (2nd Cir. 2001). In diversity cases, personal jurisdiction is determined by the law of the state in which the district court sits. Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir.1984) (citing Arrowsmith v. U.P.I., 320 F.2d 219 (2d Cir.1963)).

The plaintiff asserts that jurisdiction may be obtained here over Krim under §302(a)(1) of the New York State Civil Practice Law and Rules ("CPLR").(Docket No. 14, page 1 and 3). Section 302(a) of the CPLR provides that jurisdiction may be had over parties who are not "present" in New York under §301 where certain conditions are met. Under §302(a), so called "long-arm" jurisdiction exists as follows:

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue

>    from goods used or consumed or services rendered, in the state, or
>
>    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
>    4. owns, uses or possesses any real property situated within the state.

Capozzolo's sole argument in support of finding personal jurisdiction over Krim is that §302(a)(1) applies due to the fact that Krim allegedly transacts business within New York by offering products for sale within New York State through his various web sites which includes a toll-free number accessible by New York residents.  (Docket No. 14 at page 2).

In <u>Citigroup Inc. v. City Holding Co.</u>, 97 F.Supp.2d 549 (S.D.N.Y.2000), the Court found that the various uses of an internet web site fall within three basic categories along a spectrum. At one end of the spectrum are the uses of the internet where the "defendant makes information available on what is essentially a 'passive' web site" and the defendant's use of the web site is akin to taking out an advertisement in a newspaper with national circulation. <u>Id</u>. at 565. The use of a passive web site traditionally did not create personal jurisdiction over a defendant under § 302(a)(1). <u>Id</u>. (collecting cases). The other end of the spectrum are those cases where the defendant "clearly does business over the internet, and where it knowingly and repeatedly transmits computer files to customers in other states ." <u>Id</u>. This category can be the basis for specific jurisdiction under § 302(a)(1) for a claim arising from that business activity. The third category of internet activity that the Court identified was a "middle category" on the spectrum where "the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant." <u>Id</u> . The existence of jurisdiction

in this middle category of cases depends on the nature and the frequency of activity of the defendant. Realuyo v. Villa Abrille, 2003 WL 21537754, *6 (S.D.N.Y.,2003).

The allegations asserted by the plaintiff do not suggest that the defendant's web site is interactive to an extent that would take it out of the passive category. Under New York law, the "mere solicitation of business within the state does not constitute the transaction of business within the state" absent some other New York-directed activities. O'Brien v. Hackensack Univ. Medical Ctr., 305 A.D.2d 199, 201, 760 N.Y.S.2d 425, 427 (1st Dep't 2003); *see also* Davidson Extrusions, Inc. v. Touche Ross & Co., 131 A.D.2d 421, 423-24, 516 N.Y.S.2d 230, 232 (2d Dep't 1987) (holding placement of advertisement in national publication not sufficient to constitute transaction of business within state); *c.f.* Girl Scouts of U.S. v. Steir, 102 Fed.Appx. 217, 219 -220 (2d. Cir. 2004)(non-precedential decision citing approvingly of O'Brien and Davidson in holding that solicitation of business over internet, without more, is insufficient to obtain jurisdiction).

The cases cited by the plaintiff are inapposite. In Excelsior v. Frye, 306 F.Supp.2d. 226 (N.D.N.Y. 2004), the Court found that jurisdiction existed over the operator of a "virtual university" citing not only the maintenance of an internet site, but also the fact that the defendant in that case has students located in New York. There, the Court noted that:

> However, Excelsior points to the defendants' web site to show that they transact business within the state of New York, with students who reside here. West Haven has had at least three students and PDS has had at least seven students who resided in New York State. The web site provides chat rooms for student communications, a study hall, and on-line training sessions. It permits students to log in to their personal account and conduct transactions relating to that account including enrollment, payment of fees, and obtaining course materials. These facts constitute a

>prima facie showing that defendants transact business within the state.

Excelsior, 306 F.Supp.2d at 229. Capozzolo has not demonstrated any such activities by Krim within New York.

Similarly, in Blissworld v. Kovack, 2001 WL 940210 (N.Y. Sup. 2001), the Court found that in addition to operating a web site, the defendant direct mailed its catalog to at least 15,000 New York residents, used that customer list for direct solicitations, and announced plans to open stores within New York. Citing "the totality" of the defendant's activities in New York, the Court in Blissworld held that personal jurisdiction existed. In Borris v. Bock Waterheaters, 775 N.Y.S.2d 452 (N.Y. Sup. 2004) the Court found jurisdiction over a Wisconsin corporation not merely because it operated an internet web site, but also because it used a New Jersey based company to sell its products in New York, and that a manufacturer would expect a defect to have consequences in New York. Borris, 775 N.Y.S.2d. at 455. The remaining cases relied upon by the plaintiff do not construe New York law.

Without more, it does not appear personal jurisdiction exists over the operator of an internet web site that offers goods for sale absent some other circumstance such as a demonstration that the web site specifically targets New York residents or that the operator derives substantial revenue from the sale of goods used or consumed in New York. The Court also declined to find jurisdiction over the defendant in Novak v. Petsforum Group, Inc., 2005 WL 1861778, at *4 (E.D.N.Y.,2005), stating:

>Plaintiff has not met his burden for establishing personal jurisdiction over PGI under § 302(a)(3)(i), because plaintiff has not

8

> shown that PGI "regularly does or solicits business ... or derives substantial revenue from goods used or consumed or services rendered" in New York. Collecting random "paypal" donations, distributing a free newsletter, and providing links to other web sites, with no targeting of New York residents, is not "doing business" in New York. Also, the single act of selling an ad to Augies Dog House is insufficient under § 302(a)(1), because there is no "nexus" or "substantial relationship" between this ad and the allegations in plaintiff's complaint.

Novak, 2005 WL 1861778 at *4.  See also Griffith v. Glock, 2005 WL 1796520 (N.D.N.Y. 2005)(personal jurisdiction did not exist over corporation that manufactured ammunition in Texas even though it maintained a web site accessible to New York residents, and listed a distributor located in East Rochester, New York).

Further, the plaintiff acknowledges that to warrant a finding of jurisdiction under §302, the defendant "must both transact business in the state and the cause of action must be directly related to, and arise from, the business so transacted." (Docket No. 14 at page 2, citing Medics v. The City of Richmond, 219 F.Supp.2d 300 (E.D.N.Y. 2002)). Thus, even if the defendant's web site was sufficiently interactive to be thought of as being in the Citigroup "middle category" because a purchaser may be able to order products directly via the web site, there must be "a strong nexus between the plaintiff's cause of action and the defendant's in state conduct" for long-arm jurisdiction to apply. Welsh v. Servicemaster Corp., 930 F.Supp. 908, 910 (S.D.N.Y.1996); Knight-McConnell v. Cummins, 2005 WL 1398590, *2 (S.D.N.Y.,2005).  See also Griffith, 2005 WL 1796520 at *2 (for long-arm jurisdiction to apply it is fundamental that plaintiff's cause of action must arise from the transaction of such business in New York. ). The plaintiff's claims in this case do not arise from any business transacted between Capozzolo and Krim via Krim's internet web sites.  Instead, Capozzolo alleges the breach of a purported contract to be

culled from the exchange of e-mail messages between the two principals.  Capozzolo has not demonstrated that under New York law personal jurisdiction exists over Krim based upon the e-mail communications which led up to the purported contract. Paradise Products v. Allmark, 526 N.Y.S.2d. 119, 121 (2d Dept. 1988)(negotiations by telephone are not contacts that subject a defendant to jurisdiction at the instance of the New York party receiving them).  Further, the purported "agreement of exclusivity and non-competition" (Docket No. 1 at ¶ 7) between Capozzolo and Krim is not one to supply goods or services within New York pursuant to §302(A)(1).[2]

Capozzolo also asserts that Krim has "misappropriated proprietary information."  Such a claim is analogous to an infringement claim.  However, "[a]lthough it is in the very nature of the internet that the allegedly infringing [material] contained in [a] web site can be viewed anywhere, this does not mean that the infringement occurred everywhere. ... [C]ourts have held that in the case of web sites displaying infringing [material] the tort is deemed to be committed where the web site is created and/or maintained." Freeplay Music, Inc. v. Cox Radio, Inc., 2005 WL 1500896, *7 (S.D.N.Y.,2005)(internal citations omitted).  It is undisputed that Krim's web site is located and maintained in Texas and not New York.

Lastly, Capozzolo asserts that Krim's web site contains false and fraudulent testimonials associated with the plaintiff's product causing damage to his business reputation.  Once again,

---

[2] A breach of contract claim will not constitute tortious conduct for purposes of §302(a)(2) or (3). Amigo Foods Corp. v. Marine Midland Bank--New York, 39 N.Y.2d 391, 384 N.Y.S.2d 124, 348 N.E.2d 581, 584 (N.Y.1976) (finding no merit to argument that breach of contract constitutes tortious act forming basis of long-arm jurisdiction under N.Y. CPLR § 302(a)(2) and (3)). Anscombe Broadcasting Group, Ltd. v. RJM Communications, Inc., 2004 WL 2491641, *6 (W.D.N.Y.,2004).

the plaintiff fails to assert authority that jurisdiction exists in New York over the defendant based upon such a claim. This claim is analogous to the tort of defamation. "The mere fact that the allegedly defamatory postings may be viewed in New York is ... insufficient to sustain a finding of jurisdiction." Best Van Lines v. Walker, 2004 WL 964009, at *5 (S.D.N.Y. 2004). Indeed, §302(a)(2) expressly declines to extend long-arm jurisdiction over defamation claims. Knight-McConnell v. Cummins, 2005 WL 1398590, *3 (S.D.N.Y.,2005)(Defendant's online activities consist of postings regarding plaintiff, and as such, do not provide a basis for jurisdiction. The sole connection between plaintiff's cause of action and New York--the fact that plaintiff, the subject of defendant's postings, is a resident of New York--is not sufficient to support a finding of jurisdiction under 302(a)(1)).

Upon a review of the totality of the circumstances, the plaintiff has not met its burden to establish that long-arm jurisdiction exists over Krim in this matter.

## Conclusion

Based on the foregoing, it is recommended that the motion to dismiss for lack of personal jurisdiction be granted.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of**

**Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So ordered.

                                                                              s/Hon. Hugh B. Scott
                                                                      United States Magistrate Judge

Buffalo, New York
August 26, 2005